1 | BERNARD J. KORNBERG (State Bar No. 252006)
bjk@severson.com
2 | SEVERSON & WERSON
A Professional Corporation
3 | One Embarcadero Center, Suite 2600
San Francisco, California 94111
4 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439

JARLATH M. CURRAN, II (State Bar No. 239352)
6 | jmc@severson.com
SEVERSON & WERSON
7 | A Professional Corporation
The Atrium
8 | 19100 Von Karman Avenue, Suite 700
Irvine, California 92612
9 | Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Deutsche Bank National Trust
11 | Company, as Trustee for the Registered Holders
of Morgan Stanley ABS Capital I Inc. Trust
12 | 2007-HE6, Mortgage Pass-Through Certificates
Series 2007-HE6

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re | Case No. 9:16-bk-10564-DS |
| Ferdinand Villanueva Bayot, | Chapter 13 |
| Debtor. | Adv No. 9:18-ap-01013-DS |
| Deutsche Bank National Trust Company, As Certificate Trustee on Behalf of Bosco Credit II Trust Series 2010-1, its successors and assigns, | **MOTION TO DISMISS ADVERSARY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| Plaintiff, | Date: September 5, 2017<br>Time: 10:30 a.m.<br>Place: Courtroom 302 |
| vs. | Judge: Hon Deborah J. Saltzman |
| Deutsche Bank National Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-Through Certificates Series 2007-HE6, | |
| Defendant. | |

21000.0615/11298544.1

MOTION TO DISMISS ADVERSARY COMPLAINT

1    PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12(b)(6), as
incorporated by Federal Rule of Bankruptcy Procedure 7012, defendant Deutsche Bank National
Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust
2007-HE6, Mortgage Pass-Through Certificates Series 2007-HE6 (the "Senior Lender") hereby
moves the Court to dismiss the complaint of plaintiff Deutsche Bank National Trust Company, as
Certificate Trustee on Behalf of Bosco Credit II Trust Series 2010-1 (the "Junior Lender") for
failure to state a claim upon which relief may be granted.

This motion is supported by the attached memorandum of points and authorities, the
request for judicial notice, and any other pleadings or papers filed in this bankruptcy case or
adversary action.

DATED: July 23, 2018            SEVERSON & WERSON
                                A Professional Corporation


                                By:    /s/ Bernard J. Kornberg
                                          Bernard J. Kornberg

                                Attorneys for Deutsche Bank National Trust Company,
                                as Trustee for the Registered Holders of Morgan Stanley
                                ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-
                                Through Certificates Series 2007-HE6

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. PERTINENT FACTS ...................................................................................................... 2

    A. The Senior and Junior Loans.............................................................................. 2

    B. Debtor's Bankruptcy .......................................................................................... 3

III. THE COMPLAINT FAILS TO STATE A CLAIM ........................................................ 3

    A. The Declaratory Relief Cause of Action ............................................................ 3

    B. The Claim is Barred by the Confirmation of the Chapter 13 Plan ........................... 4

    C. Debtor Has Not Shown a Basis for Equitable Subordination of the Lien ................. 6

        1. California Law Does Not Provide for Subordination in the Absence of a Contractual Relationship Between the Lienholders .............................. 6

        2. No Facts Justifying Equitable Subordination Are Alleged ........................... 8

IV. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
　300 U.S. 227 (1937) ..................................................................................................4

*Bank of New York Mellon v. Citibank, N.A.*,
　8 Cal. App. 5th 935 (Ct. App. 2017) .........................................................................7

*In re Boukatch*,
　533 B.R. 292 (B.A.P. 9th Cir. 2015) .........................................................................6

*In re Evans*,
　30 B.R. 530 (B.A.P. 9th Cir. 1983) ...........................................................................4

*Friery v. Sutter Buttes Sav. Bank*,
　61 Cal. App. 4th 869 (1998) ................................................................................6, 7, 9

*Gluskin v. Atl. Sav. & Loan Assn.*,
　32 Cal. App. 3d 307 (Ct. App. 1973) ....................................................................6, 7, 9

*Greenspan v. LADT, LLC*,
　191 Cal. App. 4th 486 (2010) ...................................................................................1

*In re Heritage Hotel P'ship I*,
　160 B.R. 374 (B.A.P. 9th Cir. 1993) .........................................................................4

*Lennar Ne. Partners v. Buice*,
　49 Cal. App. 4th 1576 (1996) ...............................................................................7, 9

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
　312 U.S. 270 (1941) ..................................................................................................4

*In re Pardee*,
　193 F.3d 1083 (9th Cir. 1999) ..................................................................................4

*Resolution Tr. Corp. v. BVS Dev., Inc.*,
　42 F.3d 1206 (9th Cir. 1994) ....................................................................................9

*United Student Aid Funds, Inc. v. Espinosa*,
　559 U.S. 260 (2010) ..................................................................................................4

1 | **STATUTES**

2 | United States Code
3 |     Title 11
        § 506 ............................................................................................................................5
4 |         § 1322 ..........................................................................................................................6
        § 1327 ..........................................................................................................................4
5 |     Title 28
        § 2201 ..........................................................................................................................3

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this action, plaintiff Deutsche Bank National Trust Company, as Certificate Trustee on Behalf of Bosco Credit II Trust Series 2010-1 (the "Junior Lender"), the junior lienholder on real property, sues Deutsche Bank National Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-Through Certificates Series 2007-HE6 (the "Senior Lender"), the senior lienholder on the same property, for a declaratory judgment of equitable subordination.[1]  The alleged basis for this subordination is that the Senior Lender modified the loan with borrower Ferdinand Villanueva Bayot ("Debtor") and that the modification has unduly prejudiced the Junior Lender.  The Junior Lender has not pled facts to sustain this cause of action.

First, the Court must dismiss the complaint as barred by the *res judicata* effect of Debtor's Chapter 13 plan.  Debtor filed a motion to value as to the subject property and received an order stating that the Junior Lender's deed of trust was entirely unsecured and would be treated as such in the bankruptcy.  Debtor then received an order confirming his Chapter 13 plan saying that Junior Lender's claim would be treated as entirely unsecured.  Accordingly, the lien of Junior Lender has been avoided and therefore, Junior Lender lacks a lien to which it can subordinate other liens.

Second, the Junior Lender has not pled facts that would justify equitable subordination. Absent a special relationship between the lienholders, such as a contractual subordination agreement, a senior lienholder has no duty or obligation to a junior lienholder not to modify the senior lien.  Therefore, no claim for equitable subordination can arise from any modification, even if the modification is prejudicial to the junior lienholder.

---

[1] Legally speaking, "[a]... trust ... is simply a collection of assets and liabilities. As such, it has no capacity to sue or be sued, or to defend an action. [T]he proper procedure for one who wishes to ensure that trust property will be available to satisfy a judgment ... [is to] sue the trustee in his or her representative capacity." *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 522, 121 Cal. Rptr. 3d 118, 146 (2010).  Therefore, it would be correct to state that Deutsche Bank National Trust Company is in fact suing itself, though in a different representative role.

1	Third and finally, the Junior Lienholder has not shown prejudice. At the time of
2	modification, the loan was in default. The modification took the loan out of default, recapitalized
3	the outstanding interest, fees, and costs, and lowered the interest rate and added a balloon payment
4	to keep the monthly payment low. As such, the modification did not increase the balance of the
5	loan secured by the senior lien, but did take the loan out of default and lowered the risk of a
6	foreclosure on the senior lien. This cannot be said to be prejudicial or a basis for subordination.
7	For all these reasons, the Court should grant the motion to dismiss without leave to amend.

## II.  PERTINENT FACTS

**A.    The Senior and Junior Loans**

Debtor resides in and owns the real property located at 1542 Milan Drive, Simi Valley, CA 93065 (the "Property"). Compl., ¶ 3.

On or about February 27, 2007, Debtor signed an adjustable rate note (the "Senior Note") in favor of Decision One Mortgage Company, LLC ("Decision One") for $418,400.00. Compl., ¶ 11, Ex. B. In order to secure the Senior Note, Debtor executed a deed of trust (the "Senior Deed of Trust") against the Property naming Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary as nominee for Decision One. Compl., ¶ 12, Ex. B. The Senior Deed of Trust was recorded on March 8, 2007 as document number 0070308-00050462-0. Compl., ¶ 12, Ex. B.

The Senior Note was subsequently transferred to the Senior Lender. Compl., ¶ 15. On November 24, 2008, the Senior Deed of Trust was assigned to Senior Lender. Compl., Ex. B.

Also on or about February 27, 2007, Debtor signed a signed a second note (the "Junior Note") in favor of Decision One for $104,600.00. Compl., ¶ 18. In order to secure the Junior Note, Debtor executed a deed of trust (the "Junior Deed of Trust") against the Property naming Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary as nominee for Decision One. Compl., ¶ 9. The Junior Deed of Trust was recorded on March 8, 2007 as document number 0070308-00050463-0. Compl., ¶ 12. The Senior Note was subsequently transferred to the Junior Lender.

On or about May 1, 2010, Debtor and Senior Lender entered into a Home Affordable Modification Agreement (the "Modification Agreement") to modify the Senior Note and Senior

1  Deed of Trust.  Compl., ¶ 15, Ex. A.  The modification resulted in a recapitalization of the balance

2  of the amounts owed under the Senior Note and Senior Deed of Trust, a reduction in interest, and

3  a balloon payment of $13,776.45 at the end of the 27 year term.  Compl., ¶ 15, Ex. A.

4  **B.    Debtor's Bankruptcy**

5  On or about March 28, 2016, Debtor filed for chapter 13 bankruptcy.  Compl., ¶ 20.  The

6  Senior Lender filed a proof of claim as the Senior Note.  Compl., ¶ 21, Ex. B.

7  On May 3, 2016, Debtor filed a motion to value the Property.  Motion for Order

8  Determining Value of Collateral, Bky. Dkt. # 20.  The motion was granted as unopposed and on

9  June 24, 2016, the Court entered an order valuing Debtor's residence at $380,000.00 as of the

10 petition date.  Order on Motion to Value, Bky. Dkt. # 42.  The order further found that the Junior

11 Deed of Trust was entirely unsecured and would be treated as an entirely unsecured claim.  Order

12 on Motion to Value, Bky. Dkt. # 42.

13 Debtor then filed his operative fourth amended plan.  This plan proposed a payment of zero

14 dollars on the claim arising out of the Junior Note and Deed of Trust.  Fourth Amended Plan, Bky.

15 Dkt. # 65. On October 17, 2016, the Court confirmed this plan, with an interlineation that the

16 treatment of claim arising out of Junior Deed of Trust in the plan was stricken.  Instead the claim

17 arising out of the Junior Deed of Trust would be treated per the order on the motion to value.

18 Order Confirming Plan, Bky. Dkt. # 73.

19 ### III.  THE COMPLAINT FAILS TO STATE A CLAIM

20 **A.    The Declaratory Relief Cause of Action**

21 The complaint brings a sole cause of action for declaratory relief.  Pursuant to the

22 complaint, the Court should completely or partially subordinate the Senior Deed of Trust to the

23 Junior Deed of Trust.  The basis for subordination is that the Modification Agreement changed the

24 terms of the Senior Deed of Trust in a manner that the Junior Lender alleges prejudiced it.

25 Compl., ¶ 36.

26 "In a case of actual controversy . . . any court of the United States . . . may declare the

27 rights and other legal relations of any interested party seeking such declaration."  28 U.S.C.

28 § 2201.  In order to meet the "actual controversy" requirement, "the facts alleged, under all the

1 circumstances, show that there is a substantial controversy, between parties having adverse legal

2 interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

3 *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "The controversy must be

4 definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna*

5 *Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937). A plaintiff does not

6 plead an actual controversy for "a difference or dispute of a hypothetical or abstract character;

7 from one that is academic or moot." *Id.*

8 Under this standard, the Junior Lender has failed to plead an actual controversy regarding

9 whether the Senior Deed of Trust should be subordinated.

10 **B.    The Claim is Barred by the Confirmation of the Chapter 13 Plan**

11 There is no controversy for the Court to decide here as the Court has already ordered that

12 the Junior Deed of Trust is to be avoided in the order confirming the Chapter 13 plan. Therefore,

13 there is no controversy as the Junior Lender lacks a lien against the Property.

14 The provisions of a confirmed plan bind the debtor and each creditor, whether or not the

15 claim of such creditor is provided for by the plan, and whether or not such creditor has objected to,

16 has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Accordingly, "[a]n order confirming

17 a Chapter 13 plan is res judicata as to all justifiable issues which were or could have been decided

18 at the confirmation hearing." *In re Evans*, 30 B.R. 530 (B.A.P. 9th Cir. 1983). So long as notice

19 and due process are provided, this is true even if the plan's terms do not comply with the

20 bankruptcy code. *In re Pardee*, 193 F.3d 1083, 1087 (9th Cir. 1999) ("Regardless of whether the

21 plan should have been confirmed with the discharge provision, the BAP was correct in holding

22 that, the Plan is res judicata as to all issues that could have or should have been litigated at the

23 confirmation hearing") (internal quotations omitted); *United Student Aid Funds, Inc. v. Espinosa*,

24 559 U.S. 260, 276 (2010). Res judicata bars not just issues that were decided at plan confirmation,

25 "but precludes the raising of issues which could or should have been raised during the pendency of

26 the case." *In re Heritage Hotel P'ship I*, 160 B.R. 374, 377 (B.A.P. 9th Cir. 1993), aff'd, 59 F.3d

27 175 (9th Cir. 1995).

28 The issue raised by the complaint has already been settled. On May 3, 2016, Debtor filed a

motion to value the Property for the purposes of, in part, avoiding the Junior Deed of Trust. Pursuant to the Motion to Value, the Property had, as of the petition date, a value of $380,000.00. Motion for Order Determining Value of Collateral at ¶ 2, Bky. Dkt. # 20.  The motion to value further asserted that Senior Deed of Trust secured a claim in the amount of $418,425.00, therefore the Junior Deed of Trust was entirely unsecured.  Motion for Order Determining Value of Collateral at ¶¶ 3-4 Bky. Dkt. # 20.

The motion to value was not opposed, and on June 24, 2016, the Court entered an order granting the motion. Order on Motion to Value, Bky. Dkt. # 42.  The order on the motion to value found and concluded that

> Debtor seeks to value the debtor's residence at a fair market value of $380,000.00. The evidence supports a finding that the subject property had a value of $380,000.00 as of the date of the petition and the effective date of the plan.
>
> . . .
>
> The subject property is encumbered by a first deed of trust lien held by Deutsche Bank National Trust Company, securing a loan with a balance as of the petition date of approximately $431,577.98. Therefore, Deutsche Bank National Trust Company's claim secured by a junior deed of trust lien is completely under-collateralized. *No portion of this claim will be allowed as a secured claim*. See 11 U.S.C. § 506(a).

Order on Motion to Value, Bky. Dkt. # 42 (emphasis added).

Finally, on October 17, 2016, the Court entered an order confirming Debtor's fourth amended plan. As an interlineation, the order stated that "Strike Class 3 Provision regarding Deutsche Bank/Franklin 2nd trust deed; claim treated per order on Motion to Value entered 6/24/2016."[2]  Order Confirming Plan, Bky. Dkt. # 73.

The order confirming Debtor's Chapter 13 Plan treats the Junior Deed of Trust as a wholly unsecured claim. "If the claim is determined to be wholly unsecured, the rights of the creditor

---

[2] The operative fourth amended plan proposed to pay nothing on the claim arising out of the Junior Note and Junior Deed of Trust. Fourth Amended Plan, Bky. Dkt. # 65. Presumably, the purpose of this interlineation was to provide to payment of the Junior Note as an unsecured creditor as required by section 1325(b).

holding only an unsecured claim may be modified under § 1322(b)(2), and the creditor's lien may be avoided, notwithstanding the antimodification protection provided for in [§] 1322(b)(2)." *In re Boukatch*, 533 B.R. 292, 296 (B.A.P. 9th Cir. 2015) (internal quotations omitted). Upon completion of the plan, the Junior Deed of Trust will be wholly satisfied regardless of its priority to the Senior Deed of Trust. *Id*. at 299. Therefore, any dispute regarding lien priority is at best, unripe and hypothetical. As there is no actual controversy regarding the priority of the Senior Deed of Trust and the Junior Deed of Trust, the declaratory relief cause of action fails to state a claim.

**C.    Debtor Has Not Shown a Basis for Equitable Subordination of the Lien**

The Junior Lender's grounds for subordination arise out of the May 1, 2010 Modification Agreement on the Senior Note and Senior Deed of Trust. Compl., ¶ 36-37. Pursuant to the Junior Lender, the modification prejudicially changed the terms of the obligation on the Senior Deed of Trust as to justify subordination of the lien. Compl., ¶ 36-37. Even if the issue had not been decided by the confirmation of Debtor's Chapter 13 plan, it would not matter. The Junior Lender has not alleged facts that would support a claim for equitable subordination of the Senior Deed of Trust.

**1.    California Law Does Not Provide for Subordination in the Absence of a Contractual Relationship Between the Lienholders**

As an initial matter even if the Junior Lender was correct regarding the effect of the Modification Agreement, California law prohibits subordination in this instance. Under California law, "[a]bsent facts giving rise to a special relationship between the senior and the junior," the modification of a senior lien does not provide a basis for equitable subordination. *Friery v. Sutter Buttes Sav. Bank*, 61 Cal. App. 4th 869, 878 (1998). This generally occurs when a senior lienholder agrees to subordinate his lien to a junior lienholder, only for the now senior lienholder to then modify the loan to the prejudice of the subordinated lienholder. *See Gluskin v. Atl. Sav. & Loan Assn.*, 32 Cal. App. 3d 307, 313-314 (Ct. App. 1973) ("[w]e recognize the vulnerable position in which a seller who agrees to subordinate his purchase money deed of trust may find himself"). The basis of this rule is modification of the loan to the prejudice of the subordinated

1 junior lienholder may breach the policy of good faith and fair dealing arising out of the
2 subordination agreement. *Gluskin*, 32 Cal. App. 3d at 315; *Friery*, 61 Cal. App. 4th at 877
3 ("Gluskin does no more than find a duty of good faith and fair dealing in a subordination
4 agreement, preventing two of the parties from substantially impairing the third's interest in the
5 joint enterprise"); *Lennar Ne. Partners v. Buice,* 49 Cal. App. 4th 1576, 1586 (1996) ("While there
6 was no general obligation on a lender to protect a subordinating seller from the risk of the buyer's
7 default, the requirement of fair dealing prohibits conduct between a lender and a buyer that results
8 in destruction of the seller's interest").

9     No such special relationship exists in cases when a lender voluntarily takes out a junior
10 position deed of trust. *Friery*, 61 Cal. App. 4th at 879 ("It undertook no express or implied
11 contractual duties toward Friery and stood in no special relationship to her. On the contrary,
12 Friery's relationship to the bank was nothing more than that of a competing lienholder on the same
13 property"). Accordingly, "a material modification of a senior lien, such as an increase in the
14 principal or interest rate, does not result in loss of priority absent contractual subordination." *Bank*
15 *of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 954, 214 Cal. Rptr. 3d 504, 519 (Ct.
16 App. 2017).

17     No facts are pled showing a subordination agreement or other special relationship between
18 the Senior Lender and the Junior Lender at the time the loan was originated. To the contrary, the
19 Senior Deed of Trust expressly contemplated that the loan may be modified. The Senior Deed of
20 Trust states that "[t]his Security Instrument secures to Lender: (i) the repayment of the Loan, and
21 all renewals, extensions and modifications of the Note." Deed of Trust at p.2, Ex. B. to Compl.
22 Accordingly, when the Junior Lender agreed to lend money to Debtor, the Junior Lender was
23 aware that the Senior Lienholder had the right to modify its loan "on terms which enhance the
24 value of the lender's security position." *Friery*, 61 Cal. App. 4th at 878. Having taken the Junior
25 Deed of Trust well aware of the risk that the Senior Deed of Trust might be modified, the Junior
26 Lender cannot plead to equity when the Senior Lender took advantage of the rights it bargained for
27 with Debtor.
28

### 2. No Facts Justifying Equitable Subordination Are Alleged

Even if a special relationship did exist, it would not matter. The Junior Lender has not pled prejudice of the type that would support a claim for equitable subordination.

The Junior Lender alleges that the "Senior Modification are prejudicial to Plaintiff in that the secured principal balance contemplated by Plaintiff's predecessor when delivering the Bosco Note and Bosco DOT to the Debtor was $418,400.00, and substantially increased due to the Modification to $488,215.01." Compl., ¶ 36. This allegation, while facially true, does not show prejudice.

The Modification Agreement expressly speaks to how the new principal balance of the Senior Note would be calculated: "The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges." Modification Agreement at § 3.A, Ex. A. to Compl. Thus while the modification agreement did increase the principal balance of the Senior Note, it only did so by recapitalizing the loan (*i.e.* adding the past due interest, fees, and costs to the principal balance of the loan). These unpaid interest, fees, and costs were already secured by the unmodified Senior Deed of Trust. See Deed of Trust at § (H), Ex. B. to Compl. (defining the "Loan" as "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security instrument, plus interest"). The Modification Agreement may have modified the principal balance, but it did not increase the balance owed under on the Senior Deed of Trust.[3] There was no prejudice to Junior Lender by the recapitalization of the Senior Note under the Modification Agreement.

The Junior Lender further alleges they were prejudiced by "the existence of the Balloon Payment in the amount of $13,776.45, payable at maturity" because the Balloon Payment "further prejudices Plaintiff in that the likelihood of default upon maturity is substantially increased."

---

[3] In fact, as late charges were not included in the recapitalized principal balance, it actually reduced the amount owed.

Compl., ¶ 37.  In cases of a subordinated junior lien (which this is not), a modification agreement may be cause for subordination if the "risk that it will become a subject of default is materially increased" by the modification.  *Gluskin.*, 32 Cal. App. 3d at 315.  The Junior Lender has failed to plead facts alleging such increased risk.

The Modification Agreement does provide for a balloon payment of $13,776.45 to be paid upon the maturity date of April 1, 2037.  Modification Agreement at ¶ 3.A, Ex. A. to Compl.  However, whatever speculative risk of default this balloon payment creates is completely outweighed by the fact that the Debtor was already in default when the loan modification agreement was put in place.  Modification Agreement at § 1.A, Ex. A. to Compl. ("I am in default under the Loan Documents, and [] I do not have sufficient income or access to sufficient liquid assets to make monthly payments now or in the future").  Accordingly, the Modification Agreement substitutes the likely immediate foreclosure of the Property for the risk of potential default of a *de minimum* sum 27 years in the future.[4]  It would defy logic to conclude that taking the lesser step of renegotiating the loan to protect its lien may subject the senior to the loss of priority unless the junior 'consents' to it."  *Friery*, 61 Cal. App. 4th at 878; *see also Resolution Tr. Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1215 (9th Cir. 1994) ("The extension, rather than compromising an otherwise successful deal, gave the development a greater chance of turning itself around, thereby giving Aronson a greater chance of getting paid").

Finally, it should be noted that, in cases where equitable subordination has been found, it was due to revised terms that were drastically in favor of the senior lienholder at the expense of junior lienholders.  *See Lennar*, 49 Cal. App. 4th at 1584 (increasing the rate of interest by 9 percent); *Gluskin*, 32 Cal. App. 3d at 311 (raising the interest rate by 3.75% and shortening the term of the note from 30 years to 10 months when the borrower was not in default).  Here, the modification here is favorable not just to the Debtor, but to the Junior Lender.  The Senior Note was an adjustable rate note that that had a minimum monthly interest rate of 7.54%.  See Note at

---

[4] Further, should the Debtor default on the balloon payment, the Junior Lender would be fully entitled to advance the defaulted amount itself, then foreclose on its lien and recover the balance.

§ 4(C), Ex. B. to Compl.  The Modification Agreement set the rate of interest at an amount between 2-5.625%.  Modification Agreement at § 3.C, Ex. A. to Compl.  Accordingly, the Modification Agreement greatly decreases the interest owed on the Senior Note, which in turn *decreases* both the risk of default and the balance of the loan in the event of foreclosure.   There is nothing prejudicial about this modification.

The Junior Lender has not stated a claim for equitable subordination.

## IV.  CONCLUSION

For the reasons stated above, the Court should dismiss the complaint for failure to state a claim without leave to amend.

DATED:  July 23, 2018
SEVERSON & WERSON
A Professional Corporation

By: /s/ Bernard J. Kornberg
Bernard J. Kornberg

Attorneys for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-Through Certificates Series 2007-HE6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION TO DISMISS ADVERSARY COMPLAINT; MOTION TO DISMISS ADVERSARY COMPLAINT WITH MEMORANDUM OF POINTS AND AUTHORITIES will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 23, 2018 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Bernard J Kornberg     bjk@severson.com, elw@severson.com
•Elizabeth (ND) F Rojas (TR)     cacb_ecf_nd@ch13wla.com
• United States Trustee (ND)     ustpregion16.nd.ecf@usdoj.gov
•Kristin A Zilberstein     ecfnotifications@ghidottilaw.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) July 23, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Deborah J. Saltzman
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1334
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 23, 2018 | Bernard J. Kornberg | /s/ Bernard J. Kornberg |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                               **F 9013-3.1.PROOF.SERVICE**