BERNARD J. KORNBERG (State Bar No. 252006)
bjk@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

JARLATH M. CURRAN, II (State Bar No. 239352)
jmc@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Deutsche Bank National Trust
Company, as Trustee for the Registered Holders
of Morgan Stanley ABS Capital I Inc. Trust
2007-HE6, Mortgage Pass-Through Certificates
Series 2007-HE6

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>Ferdinand Villanueva Bayot,<br><br>      Debtor. | Case No. 9:16-bk-10564-DS<br><br>Chapter 13<br><br>Adv No. 9:18-ap-01013-DS |
| Deutsche Bank National Trust Company, As Certificate Trustee on Behalf of Bosco Credit II Trust Series 2010-1, its successors and assigns,<br><br>      Plaintiff,<br><br>  vs.<br><br>Deutsche Bank National Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-Through Certificates Series 2007-HE6,<br><br>      Defendant. | **REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT**<br><br>Date:    September 5, 2017<br>Time:   10:30 a.m.<br>Place:   Courtroom 302<br><br>Judge:  Hon Deborah J. Saltzman |

Deutsche Bank National Trust Company, as Trustee for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-Through Certificates Series 2007-HE6 (the "Senior Lender") hereby replies to the opposition of Deutsche Bank National Trust Company, as Certificate Trustee on Behalf of Bosco Credit II Trust Series 2010-1 (the "Junior Lender") to the motion to dismiss on the following grounds.

## I. THE JUNIOR LENDER FAILS TO SHOW THAT THE COMPLAINT STATES A CLAIM

### A.  The Confirmed Plan Bars this Action

In the motion to dismiss, the Senior Lender showed that this action is barred by the confirmation of Debtor's Chapter 13 plan. The plan, which was confirmed after the Modification Agreement was entered into, adjudicated that the Junior Deed of Trust as an entirely unsecured claim. Therefore, the Junior Lender may not seek to relitigate the action here. Motion to Dismiss, pp.4-6.

The Junior Lender's arguments as to why *res judicata* does not apply is so sparse as almost to be a complete admission that this action is barred. In one paragraph, the Junior Lender throws out a few conclusory statements as to why *res judicata* do not apply. Nothing presented by the Junior Lender sets for ground for it to escape the preclusive effect of the Chapter 13 plan.

First, the Junior Lender argues that *res judicata* does not apply as the Senior Lender was not a party to the motion to value. Opposition, p.15:2-3. This is debatable, but also, irrelevant. The provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). The order confirming the Chapter 13 plan provides that claim of the Junior Lender is to be "treated per order on Motion to Value entered 6/24/2016."  Order Confirming Plan, Bky. Dkt. # 73. Therefore, the order to value is made binding on both the Junior Lender and the Senior Lender by its incorporation into the Chapter 13 plan.

Next, the Junior Lender argues that *res judicata* does not apply as the "issue which was decided was not the same. It was whether Bosco had equity in the property not whether it had priority over a portion of the Senior's lien." Opposition, p.15:3-6. The Junior Lender further argues that "the cause of action was entirely different. As noted, the issued to be determined was

whether Bosco had equity in the property not whether it had priority over a portion of the Senior's lien." Opposition, p.15:7-9.

That the specific issues in the plan confirmation proceeding and this action vary does not mean that the Junior Lender is no longer bound by the Chapter 13 plan. "Res judicata bars both claims actually litigated and those that arise from the same transaction and could have been litigated in a prior proceeding." *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 868 (9th Cir. 1992). The priority of the Senior Deed of Trust and the Junior Deed of Trust was an essential element of the order on the motion to value as the Court had to determine that the Junior Deed of Trust was entirely without equity. *See Frazier v. Real Time Resolutions, Inc.*, 469 B.R. 889, 898 (E.D. Cal. 2012) ("the antimodification provision does not protect a creditor whose junior lien on a debtor's primary residence has been classified as an 'unsecured claim' by § 506(a)(1)"). Therefore, the lien priority of the Senior Deed of Trust and the Junior Deed of Trust was actually litigated in the order confirming the Chapter 13 plan.

Finally, it makes no difference if the lien priority was actually litigated between the Senior Lender and the Junior Lender. This Court has already ruled that the Junior Deed of Trust is to be treated as entirely unsecured and to be avoided upon completion of the Chapter 13 plan. As the Junior Lender's lien is stripped, any arguments about relative lien priority are entirely hypothetical. "[F]ederal courts established pursuant to Article III of the Constitution do not render advisory opinions." *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

The Court should grant the motion to dismiss on the ground that the claims are barred by *res judicata*.

**B.    The Junior Lender Has Not Alleged Any Contractual of Special Relationship That Would Allow for Equitable Subordination**

The Junior Lender argues that this Court should disregard the authority cited by Senior Lender and instead rely on the case of *Lennar Ne. Partners v. Buice* to determine that equitable subordination applies. Opposition, pp.12-13. Junior Lender is correct that in the *Lennar* case, the court did find that a modification of a senior lien which was prejudicial to the junior lienholder was grounds for equitable subordination. *Lennar* also does not apply in this matter. That case

arose out of a contractual relationship between the parties, namely a subordination agreement. No such contractual arrangement exists here.

As was set forth in the motion to dismiss, in California, equitable subordination is not available to "a garden variety junior lienholder who has not subordinated, bears no special relationship to the senior and possesses no extraordinary facts in her favor which would warrant the imposition of such a duty." *Friery v. Sutter Buttes Sav. Bank*, 61 Cal. App. 4th 869, 871 (1998); *see also Gluskin v. Atl. Sav. & Loan Assn.*, 32 Cal. App. 3d 307, 313-314 (Ct. App. 1973). Instead, "cases have made clear that a material modification of a senior lien, such as an increase in the principal or interest rate, does not result in loss of priority absent contractual subordination." *Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 954 (Ct. App. 2017). *Lennar* is not an exception to this unbroken line of holdings.

In *Lennar*, the borrower entered into two loans secured by separate deeds of trust to finance construction of condominiums. *Lennar Ne. Partners v. Buice*, 49 Cal. App. 4th 1576, 1580, 57 Cal. Rptr. 2d 435 (1996). The loans fell into default and a workout agreement was entered into between the parties and the two lenders. *Id.* at 1580. As part of that workout agreement, a subordination agreement was entered into by the predecessor in interest to the plaintiff in favor of the senior deed of trust. *Id*. Subsequently, the senior lienholder modified the senior deed of trust to increase the principal balance, significantly raise the interest, and shorten the term of the loan to one year. *Id*.

The *Lennar* Court concluded that "the requirement of <u>fair dealing</u> prohibits conduct between a lender and a buyer that results in destruction of the seller's interest." *Id*. at 1586 emphasis added). The covenant of good faith and fair dealing "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). Because "the covenant is based on the contractual relationship," there can be no violation of the covenant without a contract between the two parties. *Id*. As the plaintiff in *Lennar* agreed to subordinate its lien to the senior lienholder, the *Lennar* court concluded that "[d]enying priority only to the modification restores Lennar to the same position as

before: the position it <u>bargained</u> for by agreeing to accept a second lien on the property as security for its loan." *Lennar*, 49 Cal. App. 4th at 1588 (emphasis added).

In this matter, no such "bargain" exists between the Senior Lender and the Junior Lender. The Senior Lender has made no promises to and has no obligations to the Junior Lender. In fact, the Senior Lender put the Junior Lender on notice that it may modify the loan. The Senior Deed of Trust, which was recorded in the real property records, expressly states that "[t]his Security Instrument secures to Lender: (i) the repayment of the Loan, and all *renewals, extensions and modifications of the Note*." Deed of Trust at p.2, <u>Ex. B.</u> to Compl. (emphasis added). If the Junior Lender wished to be protected from any modification of the loan, it was incumbent on the Junior Lender to seek any such protection from the Senior Lender before it made the loan. The Junior Lender did not do so, and thus "[r]enegotiation of the senior loan . . .without the lender's consent was precisely one of the hazards which [Plaintiff] accepted when she . . . took back a second deed of trust." *Friery*, 61 Cal. App. 4th at 879.

Finally, it should be noted that except for *Lennar*, every case cited by the Junior Lender for equitable subordination of the lien comes out of New York or other foreign state courts. See Opposition, pp.8-9. It may well be that in those states, a special relationship is not required for a junior lender to assert subordination based on a prejudicial modification of the senior lien. As set forth above, it is undisputed such a requirement exists in California. The failure of the Junior Lender to plead such a special relationship dooms her claim.

**C.    Lender Has Failed to Show Any Prejudice in the Modification**

Finally, the Junior Lender utterly fails to show how she was prejudiced by the loan modification. As set forth in the motion to dismiss, the Modification Agreement takes the borrower out of default, lowers the borrower's rate of interest, and lowers the borrower's monthly payment. See Motion to Dismiss, pp.8-9. These revisions greatly benefit the Senior Lender by reducing the risk of foreclosure on the senior lien and reducing the amount of interest that would accrue on the loan in the case of default.

Instead, Junior Lender reiterates that the Modification Agreement was prejudicial as it increased the principal balance of the loan. Motion to Dismiss, p.6:1-11. This increase in

principal balance is not prejudicial as the Modification Agreement did not increase the indebtedness under the Senior Deed of Trust.  The Modification Agreement rolled all accrued but unpaid interest, fees, and costs into the principal balance.  Modification Agreement at § 3.A, <u>Ex. A</u>. to Compl.  These unpaid interest, fees, and costs were already secured by the unmodified Senior Deed of Trust.  See Deed of Trust at § (H), <u>Ex. B</u>. to Compl. (defining the "Loan" as "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security instrument, plus interest").  Therefore, the increase in the secured principal indebtedness was entirely offset by the elimination of the secured interest and cost balance of the loan.  In fact, because the Modification Agreement did not include late charges in the modified loan balance, the Modification Agreement lowered the total indebtedness.  Modification Agreement at § 3.A, <u>Ex. A</u>. to Compl.  The Modification Agreement was thus not prejudicial as it did not increase the amount the Senior Lender was entitled to in the event of foreclosure.

Finally, the Junior Lender again argues that the balloon payment in the Modification Agreement increases the risk of foreclosure because it will "reduce the likelihood and ability of the Debtor to pay the Senior Note by maturity, thus increasing the likelihood of foreclosure." Opposition, p.7:19-20.  As set forth in the motion to dismiss, this argument is ludicrous.  The entire purpose of the Modification Agreement was to avert a pending foreclosure, which it apparently successfully did.  Modification Agreement at § 1.A, <u>Ex. A</u>. to Compl.  Any foreclosure on the balloon payment, which would only occur 27 years from now, is entirely too speculative to create an actual controversy now.  Further, such a foreclosure would be inherently more favorable to the Junior Lender as the principal balance would be greatly reduced.  There is no prejudice by the balloon payment in the Modification Agreement.

## II. CONCLUSION

For the reasons stated above and in the motion to dismiss, the Court should dismiss the complaint for failure to state a claim without leave to amend.

1  DATED:  August 29, 2018            SEVERSON & WERSON
                                      A Professional Corporation
2

3

4                                     By:      /s/ Bernard J. Kornberg
                                                    Bernard J. Kornberg
5
                                      Attorneys for Deutsche Bank National Trust Company,
6                                     as Trustee for the Registered Holders of Morgan Stanley
                                      ABS Capital I Inc. Trust 2007-HE6, Mortgage Pass-
7                                     Through Certificates Series 2007-HE6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

A true and correct copy of the foregoing document entitled (*specify*): REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 29, 2018  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Bernard J Kornberg     bjk@severson.com, elw@severson.com
• Elizabeth (ND) F Rojas (TR)     cacb_ecf_nd@ch13wla.com
• United States Trustee (ND)     ustpregion16.nd.ecf@usdoj.gov
• Kristin A Zilberstein     ecfnotifications@ghidottilaw.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 29, 2018 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Deborah J. Saltzman
United States Bankruptcy Court
255 E. Temple Street
Suite 1634
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 29, 2018 | Bernard J. Kornberg | /s/ Bernard J. Kornberg |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                        **F 9013-3.1.PROOF.SERVICE**